| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| *versus* § | CASE NO. 1:16-CR-26 |
| § | |
| CHRISTOPHER EMORY CRAMER (1) § | |
| RICKY ALLEN FACKRELL (2) § | |

**MEMORANDUM AND ORDER**

Pending before the court are Defendants Christopher Emory Cramer's and Ricky Allen Fackrell's respective Motions to (1) Exclude All Evidence of Future Danger Including Psychological or Psychiatric Testing; (2) to Strike Future Danger Aggravating Factor from Death Notice; or (3) in the Alternative, Conduct a *Daubert* Hearing on the Admissibility of Expert Testimony (#s 209, 220) and Motions to Allow Only Evidence of Prison Setting as Evidence of Future Dangerousness (#s 202, 221). Having reviewed the motions, the responses by the Government, the pleadings, and the applicable law, the court is of the opinion that Defendants' motions should be denied.

I.  Background

On June 2, 2016, a grand jury returned a two-count superseding indictment charging Defendants, inmates of the United States Penitentiary in Beaumont, Texas, with: (1) the unlawful killing of a fellow inmate, Leo Johns ("Johns"), with premeditation and malice aforethought, in violation of 18 U.S.C. §§ 1111 and 2, and (2) conspiracy to kill Johns with premeditation and malice aforethought, in violation of 18 U.S.C. § 1117. *See* Doc. No. 47. The maximum penalty if convicted of Count One is death. Voir dire in this case is currently set to begin March 5, 2018, followed by trial on April 9, 2018. *See* Doc. No. 77.

II.   Analysis

    A.   Motions to Strike Future Dangerousness Aggravating Factor and/or Exclude Evidence

Defendants maintain that evidence of future dangerousness is unreliable and inaccurate and, therefore, the court should strike the non-statutory aggravating factor and exclude all evidence related to it. In the alternative, Defendants assert that, if the court permits such evidence, a *Daubert* hearing is necessary to examine the reliability of the Government's expert witnesses.

    1.   Future Dangerousness as a Non-Statutory Aggravator

Defendants contend that future dangerousness as a non-statutory aggravating factor contradicts congressional intent. In support of this assertion, Defendants point out that Congress chose not to include future dangerousness as a statutory aggravating factor in the Federal Death Penalty Act, 18 U.S.C. §§ 3591-3599 ("FDPA"). Although Congress did not include "future dangerousness" as a statutory aggravating factor, Defendants' argument ignores the remainder of the FDPA. Importantly, the FDPA provides a catch-all, which allows "[t]he jury . . . [to] consider whether any other aggravating factor for which notice has been given exists." 18 U.S.C. § 3592(c). In other words, the plain language of the statute permits the Government to seek the death penalty based on both the statutory aggravating factors listed in the FDPA and any other aggravating factor for which it gives notice.[1] *See id.*

Moreover, the Supreme Court of the United States and the United States Court of Appeals for the Fifth Circuit have repeatedly approved the use of future dangerousness as a non-statutory aggravating factor. *See, e.g.*, *Simmons v. South Carolina*, 512 U.S. 154, 163 (1994) ("This Court

---

[1] It is undisputed that the Government gave proper notice of its intent to use future dangerousness as a non-statutory aggravating factor in this case. *See* Doc. Nos. 30, 31, 52, 53.

2

has approved the jury's consideration of future dangerousness during the penalty phase of a capital trial, recognizing that a defendant's future dangerousness bears on all sentencing determinations made in our criminal justice system." (citations omitted)); *United States v. Snarr*, 704 F.3d 368, 394 (5th Cir. 2013) ("Where the alternative to the death penalty is life imprisonment, the government 'is free to argue that the defendant will pose a danger to others in prison and that executing him is the only means of eliminating the threat to the safety of other inmates or prison staff.'" (quoting *Simmons*, 512 U.S. at 165 n.5)); *United States v. Davis*, 609 F.3d 663, 673 (5th Cir. 2010), *cert. denied*, 562 U.S. 1290 (2011); *United States v. Fields*, 483 F.3d 313, 325 (5th Cir. 2007), *cert. denied*, 552 U.S. 1144 (2008). Therefore, Defendants' argument is without merit. Accordingly, Defendants' request to strike the non-statutory aggravating factor of future dangerousness from the Government's Notice of Intent to Seek the Death Penalty is denied.

### 2. Evidence of Future Dangerousness

Defendants assert that evidence of future dangerousness, including psychological and psychiatric testing, must be excluded because "[i]t is clear that [such evidence] would not meet the heightened reliability that is required in death penalty cases by the Eight Amendment." Additionally, Defendants attack this evidence as having "little probative value" and maintain that it "should be excluded under the balancing test of 18 U.S.C. § 3593(c)." Nevertheless, Defendants also concede that the Supreme Court has "rejected the claim that the unreliability of psychiatric predictions of future dangerousness should render it inadmissible in a capital sentencing proceeding." *See Barefoot v. Estelle*, 463 U.S. 880 (1983). Indeed, the *Barefoot* Court stated that it was "not persuaded that such testimony is almost entirely unreliable and that the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its

shortcomings." *Id.* at 899. Evidence of future dangerousness, however, is not limited to psychological and psychiatric expert testimony. As the Fifth Circuit has held: "Evidence of future dangerousness necessarily touches upon a variety of topics, including a defendant's juvenile record, prior murders and other crimes, and prison records. 'What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.'" *Snarr*, 704 F.3d at 394-95 (citations omitted). Hence, it is apparent that Defendants' argument is foreclosed by binding precedent. Accordingly, the Government may introduce evidence of future dangerousness, including, but not limited to, psychological and psychiatric testing and testimony.

### 3. *Daubert* Hearing

Defendants further aver that this evidence is inadmissible under the reliability factors established in *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Thus, Defendants contend, a *Daubert* hearing is necessary. The court, however, disagrees.

The trial court possesses considerable flexibility in assessing the reliability of expert testimony. *Kumho Tire Co. v Carmichael*, 526 U.S. 137, 141 (1999). "The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed . . . as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable." *Id.* at 152-53 (emphasis in original); *see Clark v. W&M Kraft, Inc.*, 476 F. App'x 612, 616 (6th Cir. 2012) ("There is no one method the district court must follow, nor does this decision even have to take place at a preliminary hearing."). "[T]he trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system: Vigorous cross-examination, presentation of contrary evidence, and careful instruction

on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) (quoting *United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir. 1996)); *accord United States v. Seale*, 600 F.3d 473, 491 (5th Cir.), *cert. denied*, 562 U.S. 868 (2010). "The *Daubert* analysis should not supplant trial on the merits." *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) (citing *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002)).

In the case at bar, Defendants make no specific argument challenging the qualifications or the reliability of the techniques used by any of the Government's proposed expert witnesses. Rather, Defendants' challenge is a broad and conclusory one, which requests a hearing on each and every one of the Government's proposed experts on future dangerousness. Yet, the Government states that it does not intend to introduce expert testimony of future dangerousness in its case-in-chief or in either the eligibility or selection phases of the trial, reserving only its right to use such evidence in rebuttal. Furthermore, the only supporting basis for a *Daubert* hearing is Defendants' sweeping attack on the admissibility of such evidence due to its purported unreliability, a position which the court has already rejected based on controlling precedent. Consequently, Defendants have failed to demonstrate that they are entitled to such hearing, and their request is denied.[2]

---

[2] The court notes, however, that Defendants have the ability to cross-examine any Government expert called in rebuttal and to present contrary evidence. As the Supreme Court noted in *Barefoot*, "[p]sychiatric testimony predicting dangerousness may be countered not only as erroneous in a particular case but as generally so unreliable that it should be ignored." 463 U.S. at 898. Of course, if Defendants' own expert witnesses rely on psychological or psychiatric testimony regarding future dangerousness, their opinions may be subject to the same infirmities and challenges.

B.  Motions to Limit Evidence to Prison Setting

Finally, Defendants urge that, if the court denies their former motion, it should permit only evidence that allows the jury to evaluate the potential for future danger in the context of a prison setting. Relying on *Simmons*, Defendants maintain that "[f]ederal courts have routinely held that the issue of a defendant's future dangerousness must be evaluated in the context of a life in a prison setting, not his potential to do harm if released into society." This argument, however, mischaracterizes the holding in *Simmons*. Contrary to Defendants' broad assertions, the *Simmons* Court held that the actual duration of the defendant's prison sentence and eligibility for parole is relevant to a jury's determination on future dangerousness. 512 U.S. at 163-64 ("Holding all other factors constant, it is entirely reasonable for a sentencing jury to view a defendant who is eligible for parole as a greater threat to society than a defendant who is not."). Thus, *Simmons* stands for the proposition that a jury must be informed whether the defendants are eligible for release. *Id.*; *see United States v. Bernard*, 299 F.3d 467, 482 (5th Cir. 2002) ("*Simmons* does not hold that future dangerousness is irrelevant to a jury's sentencing decision when the defendant will be imprisoned indefinitely, but instead requires that this aggravating factor be explained to the jury in the context of the defendant's ineligibility for parole."), *cert. denied*, 539 U.S. 928 (2003).

Future dangerousness is often considered in the context of a defendant's danger to others while incarcerated. *See Scheanette v. Quarterman*, 482 F.3d 815, 826-27 (5th Cir. 2007) (stating that the defendant's "likelihood of committing a serious violent act in prison over the course of a capital life term could be fully considered within the future dangerousness special issue"); *Griffith v. Quarterman*, 196 F. App'x 237, 241 (5th Cir. 2006) (holding that evidence that the

6

defendant would present a threat to the prison population because he was a sexual predator who, in the absence of women, would sexually assault fellow inmates was relevant to the issue of future dangerousness), *cert. denied*, 549 U.S. 1126 (2007). For example, in *Bernard*, the Fifth Circuit held that a rational juror could find that the defendant posed a serious threat of future harm to others "based on [the expert's] testimony, the horrific facts of [the defendant's] participation in the crimes, and ample evidence of [the defendant's] gang membership and criminal activities." 299 F.3d at 482.

Nonetheless, "the Government is not limited to arguing future dangerousness in a prison setting." *United States v. Hammer*, No. 4:96-CR-0239, 2014 WL 2451487, at *4 (M.D. Pa. May 29, 2014) (citing *United States v. Fields*, 516 F.3d 923, 942-43 (10th Cir. 2008), *cert. denied*, 556 U.S. 1167 (2009)). As the Eighth Circuit has noted, "[a] defendant in prison for life is still a risk to prison officials and to other inmates, and even though a life sentence without the possibility of parole greatly reduces the future danger to society from that particular defendant, there is still a chance that the defendant might escape from prison or receive a pardon or commutation of sentence." *United States v. Allen*, 247 F.3d 741, 788 (8th Cir. 2001), *vacated on other grounds*, 536 U.S. 953 (2002); *accord Hammer*, 2014 WL 2451484, at *3-4; *United States v. Montgomery*, 10 F. Supp. 3d 801, 839 (W.D. Tenn. 2014); *see United States v. LeCroy*, No. 2:02-CR-38-RWS-SSC, at *62 (N.D. Ga. Mar. 30, 2012) ("[T]he court finds that allowing the jury to consider the risk to the general public if they found beyond a reasonable doubt that he was an escape risk was not improper."); *United States v. Brown*, No. 3:06-CR-14-01-RLY/WGH, 2008 WL 4965152, at *5 (S.D. Ind. Nov. 18, 2008) ("Defendant's prior convictions, bad acts, and lack of remorse are relevant as to his future dangerousness to prison inmates and officers and to society as a

whole."); *United States v. Concepcion Sablan*, 555 F. Supp. 2d 1205, 1230 (D. Colo. 2007) (allowing evidence that the defendant may confiscate items that would aid in his escape as relevant to future dangerousness). Indeed, courts have consistently held that commutation and future reductions in sentence are relevant to the jury's permissible consideration of future dangerousness. *See, e.g.*, *Gallejo v. McDaniel*, 124 F.3d 1065, 1075 (9th Cir. 1997), *cert. denied*, 524 U.S. 917 (1998); *Townes v. Murray*, 68 F.3d 840, 847 n.2 (4th Cir. 1995). Therefore, the court finds Defendants' argument unpersuasive. The court will not limit the evidence of future dangerousness to the prison setting. As required by *Simmons*, however, the jury will be instructed regarding Defendants' ineligibility for release should they receive a life sentence.

III.   Conclusion

Consistent with the foregoing analysis, Defendants' respective Motions to (1) Exclude All Evidence of Future Danger Including Psychological or Psychiatric Testing; (2) to Strike Future Danger Aggravating Factor from Death Notice; or (3) in the Alternative, Conduct a *Daubert* Hearing on the Admissibility of Expert Testimony (#s 209, 220) and Motions to Allow Only Evidence of Prison Setting as Evidence of Future Dangerousness (#s 202, 221) are DENIED.

SIGNED at Beaumont, Texas, this 30th day of January, 2018.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE